**UNITED STATES of America**

v.

**Francis WALSH, Jr.**

**Cr. No. 88–114.**

United States District Court, D. New Jersey.

Nov. 10, 1988.

Samuel A. Alito, Jr., U.S. Atty. by Mark Rufolo, Asst. U.S. Atty., Office of the U.S. Atty., Newark, N.J., for plaintiff.

William W. Robertson, Irvin M. Freilich, Hannoch Weisman, Roseland, N.J., Aubrey M. Daniel, III, Williams & Connolly, Washington, D.C., for defendant.

## OPINION

RODRIGUEZ, District Judge.

This matter comes before the court on a motion by the government to disqualify counsel representing Francis Walsh, Jr. Before ruling on the disqualification motion, this court must first determine which legal and ethical disqualification rules apply and whether such application violates any of the constitutional rights of the defendant. Specifically, the court must decide whether pursuant to the General Local Rules of the United States District Court for the District of New Jersey (hereinafter Local Rules), the ABA Model Rules of Professional Conduct (hereinafter Model Rules) apply as the governing disciplinary standard or whether the court is bound to apply the Model Rules as amended by the Supreme Court of New Jersey. Resolution of this issue prior to ruling on the disqualification motion is imperative as the Model Rules provide a different standard in determining disqualification than would the rules as amended by the New Jersey Supreme Court. In addition, this court must decide whether the government waived its right to object to defendant's counsel.

### I.

Defendant Francis Walsh is charged in a two-count indictment with racketeering activity in violation of the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c) and § 1962(d). Defendant has hired the law firm of Hannoch Weisman as his legal counsel. William W. Robertson, one of the firm's partners, had served with the Department of Justice in the United States Attorney's office for the District of New Jersey from about November 1972 to December 1981. During his federal tenure, he served as an assistant U.S. attorney in charge of a unit of the Department of Justice known as the Organized Crime and Racketeering Section, Newark Strike Force and later served as First Assistant U.S. Attorney in the District of New Jersey from 1978 to 1980. He then served as the court-appointed United States Attorney before joining the Hannoch Weisman firm in December 1981. In addition, Robert J. Del Tufo, who served as a member of the New Jersey State Commission of Investigation (hereinafter SCI) from April 1981 to March 1984, also is a member of the Hannoch Weisman firm, which he joined in April 1986.

The government moved to disqualify Robertson and the Hannoch Weisman firm. The government asserts that during his assignment to the Strike Force, Robertson exercised supervisory authority in activities closely related to the government's case against defendant. In addition, the government contends that the SCI, during the period while Del Tufo was a member, conducted an investigation which focused on defendant. The government asserts that Del Tufo participated in and had personal knowledge of the investigation. Thus, the government argues that pursuant to the disciplinary rules, both Robertson, Del Tufo and the Hannoch Weisman firm are barred from representing Walsh in the

present case. Counsel for defendant dispute the government's claims.

In support of its motion, the government argues that pursuant to Local Rules 6, 7 and 1, this court is bound to apply the Model Rules as amended by the New Jersey Supreme Court. Counsel for defendant disagrees. This court heard oral argument on this issue and then ordered supplemental briefing. Upon review of the submissions of the parties and for the reasons stated herein, this court holds that the Local Rules incorporate by reference the Model Rules without amendment. In addition, the court has determined that it will follow the guidance provided by Congress in the Ethics in Government Act of 1978, 18 U.S.C. § 207, which delineates certain restrictions for government officials entering the private sector. Finally, this court holds that the government has not waived its right to object to defendant's counsel.

## II.

Analysis of this issue must begin within the framework of the Sixth Amendment which entitles a criminal defendant to effective assistance of counsel. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have Assistance of Counsel for his defense." In a litany of cases, the Supreme Court has long recognized the principle expressed in the seminal case of *Powell v. Alabama* that the Sixth Amendment right of counsel affords the defendant with "a fair opportunity to secure counsel of his own choice." 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932). *See, e.g., Chandler v. Fretag,* 348 U.S. 3, 9, 75 S.Ct. 1, 4–5, 99 L.Ed. 4 (1954); *Glasser v. United States,* 315 U.S. 60, 70, 62 S.Ct. 457, 464–65, 86 L.Ed. 680 (1942).

The Supreme Court recently reaffirmed this principle by acknowledging that the "right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment." *Wheat v. United States,* —— U.S. ——, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988). Although this right is not absolute and may be circum-

scribed, a trial court "must recognize a presumption in favor of [a defendant's] counsel of choice." *Id.* 108 S.Ct. at 1700. Thus, in assessing a disqualification motion, the court must balance the defendant's right to counsel of his choice with the court's "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." 108 S.Ct. at 1697. In addition, this court notes that disqualification is never automatic. *United States v. Miller,* 624 F.2d 1198, 1201 (3d Cir.1980). Within this background, the court now examines the issue at hand.

## III.

█ The local rules of this district provide that:

> The Rules of Professional Conduct and the Code of Judicial Conduct of the American Bar Association shall govern the conduct of the Judges and the members of the bar admitted to practice in this Court.

D.N.J.Gen.R. 6. Local Rule 6, when read in isolation, clearly provides for governance according to the Model Rules. The government contends, however, that Local Rule 6 must be read in the context of other Local Rules and the legislative history of the rules. Such a reading, the government asserts, demonstrates that the Model Rules must be applied as amended by the Supreme Court of New Jersey including incorporation of the New Jersey Rules of Professional Conduct (hereinafter N.J.Rules). Contrary, the defendant argues that the district court is not bound by any single governing rule, and that in any event, the governance of professional conduct before the district court is a matter of federal law.

As earlier stated, resolution of this issue is crucial because of the varying disqualification standards of the Model Rules and N.J.Rules. Specifically, Model Rule 1.11, which governs disqualification, provides for a standard based on a "personal and substantial participation" test.[1] Contrary,

---

1. The ABA Model Rule 1.11 provides in relevant part:

New Jersey's version of Rule 1.11 adopts a more demanding standard for disqualification of a former government employee. The New Jersey rule, in addition to the personal and substantial participation test, applies an "appearance of impropriety" standard to former government employees.[2] A second critical area of divergence centers on the standards for disqualifying a firm employing a past government employee. Model Rule 1.11 specifically permits screening of attorneys, even if the attorney personally or substantially participated in the same matter in which the attorney's firm is involved. Contrary, the New Jersey version of 1.11 does not provide a screening mechanism when the attorney is personally or substantially involved. Thus, the New Jersey rule provides for imputed disqualification of a law firm when one of its attorney's is barred from representing a client under N.J.Rule 1.11(a).

After careful examination, this court holds that the district court should apply the ABA Model Rule 1.11 standard without

amendment. *See Belfiore v. Badaracco,* Civ. No. 88–836, slip op. at 7, (D.N.J. Jun. 27, 1988) (court read Local Rule 6 as "providing for governance solely according to the Model Rules"). This court adopts this approach for several reasons.

First, it is clear that the language of Local Rule 6 provides for governance according to the Model Rules without amendment. In fact, the government admits that Rule 6, when viewed in isolation, can be reasonably construed "to incorporate either the original ABA version or the amended N.J. version of the Rules." Brief for Government at 15. The government contends however that Local Rules 1 and 7 when read with Local Rule 6 support the N.J. version. Local Rule 7, Section D provides that an attorney may be disciplined for violating the "Disciplinary Rules."[3] D.N.J.Gen.R. 7 D. Rule 1, the definitional section of the Local Rules, defines "Disciplinary Rules" as "the Rules of Professional Conduct of the American Bar Associa-

(a) Except as law may otherwise expressly permit, a lawyer shall not represent a private client in connection with a matter in which the lawyer *participated personally and substantially as a public officer or employee,* unless the appropriate government agency consents after consultation. No lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter unless:

(1) the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom; and

(a) written notice is promptly given to the appropriate government agency to enable it to ascertain compliance with the provisions of this rule.
(emphasis added).

**2.** Specifically, the N.J.Rule 1.11 provides in relevant part:

(a) Except as law may otherwise expressly permit, a lawyer shall not represent a private client in connection with a matter (1) in which the lawyer participated personally and substantially as a public officer or employee, (2) about which the lawyer acquired knowledge of confidential information as a public officer or employee, or, (3) for which the lawyer had substantial responsibility as a public officer or employee.
(b) *An appearance of impropriety may arise from a lawyer representing a private client in connection with a matter that relates to the*

*lawyer's former employment as a public officer or employee even if the lawyer did not personally and substantially participate in it,* have actual knowledge of it, or substantial responsibility for it. *In such an event, the lawyer may not represent a private client,* but a firm with which that lawyer is associated may undertake or continue representation if: (1) the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom, and (2) written notice is promptly given to the appropriate government agency to enable it to ascertain compliance with the provisions of this rule. (emphasis added).

**3.** Rule 7 provides in pertinent part:
**D. Standards for Professional Conduct**
1. For misconduct defined in these Rules and for good cause shown, and after notice and opportunity to be heard, any attorney admitted to practice before this Court may be disbarred, suspended from practice before this Court, reprimanded or subject to such other disciplinary action as the circumstances may warrant.
2. An act or omission by an attorney admitted to practice before this Court, individually or in concert with any other person or persons, which violates the Disciplinary Rules shall constitute misconduct and be grounds for discipline whether or not the act or omission occurred in the course of an attorney-client relationship. D.N.J.Gen.R. 7.

tion *as amended by the Supreme Court of New Jersey."* D.N.J.Gen.R. 1 (emphasis added). The government argues that the inconsistency in the language illustrates that Rule 6 cannot be read in isolation but must be read in harmony with Rule 7 and the definitional section. According to the government, the two rules can only be reconciled by interpreting Rule 6 like Rule 7 to refer to the N.J.Rules. The government then attempts to reconstruct the legislative history behind the current version of the Local Rules, which took effect in October 1984 and asserts that the history of the rules support the government's interpretation.

As support of its argument, the government relies on *United States v. Miller,* 624 F.2d 1198 (3d Cir.1980) which upheld a district court decision that read Local Rule 6 as incorporating not only New Jersey's published disciplinary rules but also the state law on the interpretation of the rules. However, this court notes that at the time of the *Miller* decision Local Rule 6 provided that the "Disciplinary Rules of the Code of Professional Responsibility of the American Bar Association *as amended by the Supreme Court of New Jersey ...* shall govern the conduct of ... the members of the Bar admitted to practice in this Court." As Judge Barry pointed out in the *Belfiore* case, the present version of local rule 6 "has excised" the language "as amended by the Supreme Court of New Jersey." *Belfiore,* slip op. at 7 n. 1, Civ. No. 88–836, slip op. at 7, n. 1. Thus, *Miller* is inapposite. In addition, this court finds the government's argument ambiguous at best.

Second, and more importantly, it is clear that "supervision of the professional conduct of attorneys practicing in a federal court is a matter of federal law." *Miller,* 624 F.2d at 1200. *See also IBM v. Levin,* 579 F.2d 271, 279 n. 2 (3d Cir.1978). It is well settled that federal courts have "autonomous control" in supervising the conduct of attorneys who practice before their courts. *Theard v. United States,* 354 U.S. 278, 281, 77 S.Ct. 1274, 1276, 1 L.Ed.2d 1342 (1957). This control over a "lawyer's professional life derives from his relation to the responsibilities of a court." *Id.* Thus, for example, a federal court is not bound by a state court decision to disbar an attorney. *Id.* at 282, 77 S.Ct. at 1276–77. Nor is the federal court limited to impose the same sanction that the state court imposes. *See Matter of Caruso,* 414 F.Supp. 43, 44 (D.N.J.1976) (federal court "not bound by any disciplinary action previously taken by any other court"). Thus, although a state court action is entitled to respect, "it is not conclusively binding on the federal courts." *In re Ruffalo,* 390 U.S. 544, 547, 88 S.Ct. 1222, 1224, 20 L.Ed.2d 117 (1968). A federal court may in the interest of comity and in order to maintain public confidence in the judicial system impose the same sanctions as the state court; however, it is clear that there is an "absolute and unfettered power of a district court to admit and to discipline members of its bar independently and separately from admission and disciplinary procedures of (a) the state courts and (b) the (circuit) court." *Matter of Abrams,* 521 F.2d 1094, 1101 (3d Cir.), *cert. denied,* 423 U.S. 1038, 96 S.Ct. 574, 46 L.Ed.2d 413 (1975).[4]

This "autonomous power" supports the decision that this court is not bound to apply the ABA Model Rules as amended by the New Jersey Supreme Court. In fact, it would be incongruous that this court be bound to apply the New Jersey Model Rules yet would not be bound to disbar an attorney who was disbarred in a state proceeding pursuant to that same rule. This court agrees with the reasoning of *Figueroa–Olmo v. Westinghouse Elec. Corp.* which stated:

> Although reference to how the supreme court, of a district where the federal

---

**4.** As this district court has previously held:

It is the duty of this Court, and every Court, separately to consider and to evaluate each disciplinary matter which comes before it. We do not foresee that this obligation will often cause us to disagree with other courts administering the discipline of other bars. When we do disagree, however, then, with deference and respect to the wisdom and judgment of others, we must follow our own. *Matter of Caruso,* 414 F.Supp. 43, 44 (D.N.J. 1976).

court sits, applies its code of professional conduct is helpful, the resolution of problems of this nature which may arise in a federal case is a matter of federal law entrusted to the discretion of the federal district court.

616 F.Supp. 1445, 1450 (D. Puerto Rico 1985) (citation omitted). *See also Black v. State of Missouri,* 492 F.Supp. 848, 874–75 (W.D.Mo.1980).

Third, pursuant to the statute governing the local rulemaking authority of the district courts, local rules "shall be consistent with Acts of Congress and rules of practice and procedure proscribed by the Supreme Court". 28 U.S.C. § 2071. In fact, federal courts may strike down local rules which are inconsistent with federal statutes or procedural rules. *See, e.g., Miner v. Atlass,* 363 U.S. 641, 80 S.Ct. 1300, 4 L.Ed.2d 1462 (1960); *Williams v. U.S. District Court,* 658 F.2d 430 (6th Cir.), *cert. denied,* 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981).

■ Analysis of applicable federal law leads this court to the Ethics in Government Act, which governs the postservice employment of employees and officers of the federal government executive branch including the conduct of former employees of the Department of Justice. The federal criminal statute, codified at 18 U.S.C. § 207 and 28 C.F.R. § 45.735–7 demonstrates Congress' pronouncement concerning the proper procedure for public officials entering the private sector. The federal statute tracks the language of the ABA Model Rules by applying the personal and substantial participation test. Specifically, under section 207(a), a former government officer or employee is permanently prohibited from acting as attorney for any person, other than the United States, in any matter in which the officer participated personally and substantially while in office. In addition, section 207(b) sets forth a mandatory two-year ban for a former officer or employee from knowingly acting as an attorney for any person, other than the United States, in any matter "which was actually pending under his official responsibility as an officer within one year prior to the termination of such responsibility ...."

The government asserts, however, that under the *Miller* case, the Ethics in Government Act does not prevent "courts and bar associations from holding former employees of the federal government to standards more demanding than the minimal requirements of the criminal law." 624 F.2d at 1202. This court, however, declines to interpret Local Rule 6 to apply a disciplinary rule with a more demanding standard than the federal government has adopted especially when adoption of such a demanding standard would seriously infringe on the defendant's Sixth Amendment right to counsel of his choice.[5] In fact, the "appearance of impropriety" standard has come under attack by several federal courts.[6] *See, e.g., United States v. Washington,* 797 F.2d 1461, 1466 (9th Cir. 1986); *Board of Education of the City of New York v. Nyquist,* 590 F.2d 1241, 1247 (2d Cir.1979). Thus, this court reads Local Rule 6 as incorporating the Model Rules without amendment; such an interpreta-

---

**5.** As defendant's counsel point out, the Department of Justice criticized the New Jersey version of RPC 1.11 as conflicting with and preempted by the federal Ethics in Government Act. Specifically, the Department of Justice objected "most strenuously to the adoption of an absolute imputed disqualification rule for law firms hiring former government lawyers" and contended that the rule would impose "a significantly greater burden on Federal employees than those set forth in the Federal post-employment statutes and regulations." New Jersey Rules of Professional Conduct Rule 1.11 comment (1988).

**6.** In *United States v. Washington,* the Ninth Circuit criticized the *Miller* decision which approved of the district court's reliance on the New Jersey restrictive disciplinary rule. As earlier discussed, this court finds *Miller* inapposite; however, the language of the Ninth Circuit is instructive:

> We cannot accept the Third Circuit's reliance upon such a restrictive reading of the ABA disciplinary rule as a basis for denying a criminal defendant his Sixth Amendment right to counsel of his choice. We have grave doubts whether an appearance of impropriety would ever create a sufficiently serious threat to public confidence in the integrity of the judicial process to justify overriding Sixth Amendment rights.

797 F.2d 1461, 1466 (9th Cir.1986).

tion is consistent with federal law and statutes.[7]

Thus, in light of a federal court's broad discretionary power to govern the professional conduct of attorneys before it and due to the clear language of Local Rule 6, this court holds that the district's local rules incorporate the A.B.A. Model Rules of Professional Conduct without amendment. In applying Model Rule 1.11, the court will turn to the guidance provided in the Ethics in Government Act. In conclusion, under the federal statute and Model Rules, the "personal and substantial participation" test applies to this disqualification motion.[8]

### IV.

 Defendant has also asserted that the government waived its objection to defendant's counsel. Specifically, defendant alleges that Robertson contacted representatives of the federal government as early as January 1985 but that the government did not indicate that there was a possible impropriety until April 1988.

The government argues, however, that the motion to disqualify counsel, filed on July 1, 1988, was only three months after the government filed the indictment against the defendant. This court notes that equitable estoppel is invoked sparingly. *City of Cleveland v. Cleveland Elec. Illuminating Co.*, 440 F.Supp. 193, 204 (N.D.Ohio 1976), *aff'd mem.*, 573 F.2d 1310 (6th Cir.1977), *cert. denied*, 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85 (1978). In addition, the facts in this case do not support defendant's claim for equitable estoppel considering that the motion to disqualify was filed only several months after the indictment. Accordingly, this court holds that the government has not waived its objection to defendant's counsel.

### V.

For the reasons stated above, this court finds that Local Rule 6 incorporates by reference the American Bar Association Model Rules without amendment by the New Jersey Supreme Court. Further, this court holds that the government has not waived its disqualification objection. Accordingly, this court will set a schedule for orderly discovery and a date for a hearing at which time the court will rule on the government's disqualification motion as to Robertson and as to the Hannoch Weisman firm.

An appropriate order will be entered.

---

7. This court also notes that Model Rule 1.11 begins with the phrase "except as law may otherwise expressly permit." The court views that language as further support for incorporation of the Ethics in Government Act.

8. Since this court has held that only the A.B.A. Model Rules apply, there is no need to address defendant's contention that incorporation of New Jersey Rule of Professional Conduct 1.11 into Local Rule 6 or 7 unconstitutionally impairs defendant's Sixth Amendment and due process rights.